IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STARWOOD HOTELS AND | § | |
| RESORTS WORLDWIDE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1210 |
| | § | |
| CENTURY SURETY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Starwood Hotels and Resorts Worldwide, Inc. (Starwood), brings this action against defendant, Century Surety Company (Century), for breach of contract and violation of Sections 541.051 and 542.056 of the Texas Insurance Code and Section 17.46 of the Texas Deceptive Trade Practices Act. Century counterclaims under 28 U.S.C. §§ 2201 and 2202 seeking declaration of its rights and obligations to Starwood. Pending before the court is Defendant Century Surety Company's Motion for Partial Summary Judgment (Docket Entry No. 34) and Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 36). For the reasons explained below Century's motion will be granted, and Starwood's motion will be denied.

## I. Undisputed Facts

On July 29, 2004, Starwood entered into a contract with Absolute Glassworks (Absolute) for the installation of windows at

the St. Regis Hotel in Houston, Texas.  The contract required Absolute to carry commercial general liability insurance naming Starwood as additional insured.[1]  Absolute held commercial general liability insurance from Century.  The Century Policy, No. CCP298662, was effective from March 22, 2004, to March 22, 2005.[2]  Effective August 10, 2004, the Century Policy was amended to include an endorsement under which Starwood was expressly designated an additional insured.[3]

The Century Policy provided the following grant of coverage:

1.    Insuring Agreement

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But
>
> > (1)  The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

---

[1]Contract, Exhibit A1 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-3, p. 4 ¶ 2).

[2]Century Surety Company Commercial Lines Policy, Exhibit A2 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-4, p. 3).

[3]Id. at Document 37-4, pp. 48-49.

> > (2)  Our right and duty to defend ends when we
> > have used up the applicable limit of
> > insurance in the payment of judgments or
> > settlements under Coverages A or B or
> > medical expenses under Coverage C.
>
> > No other obligation or liability to pay sums or
> > perform acts or services is covered unless
> > explicitly provided for under Supplementary
> > Payments — Coverages A and B.[4]

Starwood also had general liability insurance from Zurich-American Insurance Company, Policy No. GLO 8298007-05, effective from December 31, 2003, through December 31, 2004.[5]

On August 25, 2004, Arturo Tobillas sustained fatal injuries when he fell to the ground from the fifth floor of the St. Regis Hotel in Houston, Texas.  On May 3, 2005, Tobillas's estate and his parents (claimants) filed suit against Starwood, Rita Tobillas, et al. v. Starwood Hotels & Resorts Worldwide, et al., Cause No. 05-CV-01904, United States District Court for the Southern District of Texas, Houston Division (underlying lawsuit).  Alleging that "Arturo Tobillas was an employee of "Absolute" and/or dually employed and under the control of "Hotel" Defendant [i.e., Starwood], in the course and scope of his employment, at times material therein and on such occasion of his death,"[6] the claimants

---

[4]Id. at Document 37-4, p. 21 ¶ 1(a).

[5]Zurich-American Insurance Group General Liability Policy, Exhibit C attached to Defendant Century Surety Company's Brief in Support of Its Motion for Partial Summary Judgment, Docket Entry No. 35.

[6]See Plaintiffs' First Amended Original Complaint, Exhibit A3 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37, p. 5.

-3-

in the underlying lawsuit asserted claims pursuant to the Texas Wrongful Death Act, Texas Civil Practices & Remedies Code §§ 71.001, 71.004, et seq., subchapter A, the Texas Survival Act, Texas Civil Practices & Remedies Code § 71.021(a)-(c), and common law claims for negligence, gross negligence, and intentional infliction of emotional distress.[7]

On June 22, 2005, counsel for Starwood wrote to Century demanding that Century "assume responsibility" for Starwood's defense in the underlying lawsuit and "acknowledge its contractual obligation to provide indemnity for any damages" ultimately awarded therein.[8]  On August 4, 2005, Century denied coverage citing the "Action Over Exclusion" of its policy.[9]  On August 16, 2005, Starwood contested Century's denial of coverage.[10]  On September 21, 2005, Century notified Starwood that although it "stands by and reiterates its analysis and coverage position enunciated in its August 04, 2005 letter . . . Century Surety agrees to provide a

---

[7]Id. at pp. 4-12.

[8]June 22, 2005, letter from William S. Helfand to Kathy Zatari, Exhibit A4 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37.

[9]See August 4, 2005, letter from Lorna J. New to Dominic Smith, Exhibit A5 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-3, pp. 7-8).

[10]See August 16, 2005, letter from Christine Kirchner to Lorna J. New, Exhibit A6 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37.

qualified defense subject to this reservation of rights."[11]
Century's letter to Starwood explained that

> those reasonable and necessary defense fees and expenses
> incurred by Starwood in defending those claims and
> actions asserted against it by Plaintiffs in the
> Underlying Lawsuit from Starwood's June 22, 2005 notice
> to Century Surety up to and including the present and
> future incurred reasonable and necessary defense fees and
> expenses may, possibly, be subject to reimbursement to
> Starwood and/or its insurer from Century Surety.[12]

After settling the underlying lawsuit and fully funding the
settlement, Century explained to Starwood that "settlement of the
Tobillas litigation should not be construed as a waiver of any
position Century Surety has taken concerning coverage for this
claim.  Century Surety reserves its right to pursue a determination
of coverage on this matter as detailed in prior correspondence."[13]

Starwood filed this action seeking defense costs on April 11,
2006 (Docket Entry No. 1).  On May 26, 2006, Century filed its
counterclaim seeking declaration that it had no duty to defend
Starwood, no duty to indemnify Starwood against the allegations in
the underlying lawsuit, and no obligation to pay Starwood's costs

---

[11]September 21, 2005, letter from Lorna J. New to Christine
Kirchner, Exhibit A7 included in Appendix in Support of Plaintiff's
Motion for Partial Summary Judgment, Docket Entry No. 37 (Document
37-9, p. 2).

[12]Id. at pp. 7-8.

[13]June 19, 2006, letter from David Liebler to Charles T.
Jeremiah, Exhibit A11 included in Appendix in Support of
Plaintiff's Motion for Partial Summary Judgment, Docket Entry
No. 37 (Document 37-13, p. 2).

of defense beyond those that it had already voluntarily offered to pay pursuant to a reservation of rights (Docket Entry No. 5).  On August 24, 2006, Century filed an amended counterclaim reasserting its initial counterclaim and adding counterclaims for breach of contract, quasi-contract, and quantum meruit (Docket Entry No. 20).

## II.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>), (quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554).  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . .

-6-

both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

### III.   Cross-Motions for Partial Summary Judgment

Starwood argues that it is entitled to partial summary judgment on its breach of contract claim for the full amount of its defense costs and for attorney's fees.[14]  Century argues that it is entitled to partial summary judgment declaring that it has no duty to defend Starwood in the underlying lawsuit, and that if it has such a duty, it is limited to half of Starwood's defense costs because when Tobillas died Starwood was covered against the allegations in the underlying lawsuit by the Zurich Policy.[15]

### A.   Principles of Insurance Contract Construction

In diversity cases federal courts must apply the substantive law of the forum state.  <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 58 S.Ct. 817 (1938).  <u>Texas Industries, Inc. v. Factory Mut. Ins. Co.</u>, ___ F.3d ___, 2007 WL 1376337, *1 (5th Cir. May 11, 2007) (citing <u>Farrell Constr. Co. v. Jefferson Parish, La.</u>, 896 F.2d 136, 140 (5th Cir. 1990)).  Absent direct authority from the state's highest court, the court must apply state law mindful of what it thinks

---

[14]See Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 36, p. 3.

[15]See Defendant Century Surety Company's Motion for Partial Summary Judgment, Docket Entry No. 34.

that court would decide.   See <u>Centennial Ins. Co. v. Ryder Truck</u> <u>Rental, Inc.</u>, 149 F.3d 378, 382 (5th Cir. 1998).

Texas rules of contract construction require unambiguous policy language, i.e., language worded so that it can be given a definite or certain legal meaning, to be construed as a matter of law.   See <u>National Union Fire Ins. Co. of Pittsburgh, PA v. CBI</u> <u>Indus., Inc.</u>, 907 S.W.2d 517, 520 (Tex. 1995).   Whether a contract is ambiguous is a question of law.   <u>Kelley-Coppedge, Inc. v.</u> <u>Highlands Ins. Co.</u>, 980 S.W.2d 462, 464 (Tex. 1998).   An ambiguity does not arise simply because the parties offer conflicting interpretations.   An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations.   <u>Id.</u> at 465.   When an insurance policy can be given multiple reasonable interpretations, "[i]t is a settled rule that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer."   <u>Texas Industries</u>, ___ F.3d at ___, 2007 WL 1376337, *2 (quoting <u>Kelly Assocs., Ltd. v. Aetna Cas.</u> <u>and Sur. Co.</u>, 681 S.W.2d 593, 596 (Tex. 1984) (noting that this rule is "especially so when dealing with exceptions and words of limitation")).

**B.   Did Century Have a Duty to Defend Starwood?**

1.   <u>Applicable Law</u>

Texas follows the "eight-corners rule" under which an insurer's duty to defend is determined by the underlying pleadings,

considered in light of the policy provisions without regard to the truth or falsity of those allegations.  See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006). Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination, and allegations against the insured are liberally construed in favor of coverage. Id.  "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured," American Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 848 (Tex. 1994), but if the four corners of a petition allege facts stating a cause of action that potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend.  See Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004).  If all the facts alleged in the underlying petition fall outside the scope of coverage, there is no duty to defend.  Id.  Doubts regarding the duty to defend are resolved in favor of the duty.  Id.  The insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage.  Id.  If the insured meets this burden, the burden shifts to the insurer to establish that the plain language of a policy exclusion allows the insurer to avoid coverage of all claims.  Id.  Factual allegations that poten-tially support a covered claim are all that is needed to invoke the insurer's duty to defend; facts actually established in the under-

lying suit control the duty to indemnify.  See GuideOne, 197 S.W.3d at 310.

2.   Arguments of the Parties

Century argues that the "Action Over Exclusion" included in its policy bars Starwood from coverage for the claims asserted against it in the underlying lawsuit.  Century argues that

> 19.  The action over exclusion was added to the Century Policy through a specific endorsement. . . . The action over exclusion, by its terms, replaces the employee injury exclusion in the standard general liability policy form. . . . A fundamental difference between the action over exclusion and the employee injury exclusion is the employees to which the exclusions apply.
>
> . . .
>
> 21.  The action over exclusion, which was added to the Century Policy to replace the employee injury exclusion, is similar to the employee injury exclusion in many respects.  However, the one key respect in which it is different is its application to *the named insured*, as opposed to *the insured*. . . . While the employee injury exclusion focuses on *the insured*, the action over exclusion reads that the insurance does not apply to "'Bodily injury' to: . . . An 'employee' of *the named insured* arising out of and in the course of: . . . Employment by *the named insured*, . . ."[16]

Citing Admiral Ins. Co. v. Trident NGL, Inc., 988 S.W.2d 451, 455-56 (Tex. App. — Houston [1st Dist.] 1999, pet. denied), Century argues that "the named insured" referenced in the "Action Over Exclusion" is not the same as "the insured" referenced in the employee injury exclusion that the "Action Over Exclusion"

---

[16]Defendant Century Surety Company's Brief in Support of Its Motion for Partial Summary Judgment, Docket Entry No. 35, pp. 6-7.

replaced.[17]   In <u>Admiral</u> an insurer invoked an employee injury
exclusion as grounds for denying coverage to an additional insured
for claims arising out of an injury to an employee of the named
insured.  The exclusion in the policy at issue in <u>Admiral</u> stated:

> This insurance does not apply:
>
> (k) to bodily injury to any employee of the Insured
> arising out of and in the course of his employment by the
> Insured for which the Insured may be held liable as an
> employer or in any other capacity; or to any obligation
> of the Insured to indemnify or contribute with another
> because of damages arising out of the bodily injury
> . . . .

<u>Id.</u> at 455.  In determining that the exclusion did not bar coverage
to the additional insured seeking coverage the court reasoned that

> [b]y its terms, the exclusion applies to the "insured,"
> not the "named insured."  When, as here, a policy has a
> "severability of interests" clause, each insured against
> whom a claim is brought is treated as if it was the only
> insured under the policy.  <u>Commercial Standard Ins. Co.</u>
> <u>v. American Gen. Ins. Co.</u>, 455 S.W.2d 714, 721 (Tex.
> 1970).  Neither party disputed that Santos was an
> employee of [the named insured].  If Santos had sued [the
> named insured] for his injuries, [the named insured]
> would have been denied coverage under the exclusion.  The
> exclusion did not apply to [the additional insured],
> however, because [the additional insured] was not Santo's
> employer.

<u>Id.</u>

Without disputing that Absolute is the policy's only named
insured, Starwood argues that the "Action Over Exclusion" does not
bar coverage for the claims asserted against it in the underlying

---

[17]<u>Id.</u> at pp. 9-10.

lawsuit because the exclusion is inapplicable to Starwood and even if the exclusion were applicable, it would not excuse Century's duty to defend before the adjudication of the exclusion's applicability.[18]

       3.   <u>Analysis</u>

            (a)  Is the "Action Over Exclusion" Applicable to Starwood?

Century contends that it has no duty to defend because the "Action Over Exclusion" bars coverage for claims filed by employees of the named insured, and Tobillas was alleged to have been employed by Absolute, the only named insured of the Century Policy. The "Action Over Exclusion" provides

    e.   Employer's Liability

        "Bodily injury" to:

        (1)  An "employee" of the named insured arising out of and in the course of:

             (a)  Employment by the named insured; or

             (b)  Performing duties related to the conduct of the named insured's business; or

        (2)  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

        This exclusion applies:

---

[18]Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 36, pp. 9-17.

> > (1)   Whether the named insured may be liable
> >        as an employer or in any other capacity;
> >        and
> >
> > (2)   To any obligation to share damages with
> >        or repay someone else who must pay
> >        damages because of the injury.[19]

Starwood argues that the "Action Over Exclusion" is not applicable because (1) the policy's separation of insureds provision precludes the exclusion's application to Starwood, and (2) Century's own logic precludes the exclusion's application to Starwood.[20]

> **(1)   Does the Separation of Insureds Provision
>         Preclude Application of the "Action Over
>         Exclusion" to Starwood?**

Citing the Separation of Insureds provision contained in the Century Policy, Starwood argues that the term "the named insured" used in the "Action Over Exclusion" must be construed as referring only to Starwood and that to the extent Tobillas was not Starwood's employee — as emphasized by Century in its original counterclaim —

---

[19]Century Surety Company Commercial Lines Policy, Exhibit A attached to Docket Entry No. 35 (Document 35-3, p. 17). See also Exhibit A2 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-4, p. 18).

[20]Although in Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, Docket Entry No. 38, pp. 11-12, Starwood asserts that "the exclusion even contains language demonstrating that Century only intended it to apply with respect to the claims made against the named insured: 'Whether the named insured may be liable as an employer or in any other capacity,'" Starwood has failed to submit any argument or cite any authority in support of this argument.

the "Action Over Exclusion" does not apply to Starwood.[21]  Quoting

Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203 (Tex. App. — Houston

[1st Dist.] 2003, pet. denied), Starwood argues that

> "[t]he intent of the severability clause is to provide
> each insured with separate coverage, as if each were
> separately insured *with a distinct policy*, subject to the
> liability limits of the party" . . . "The severability
> clause serves to provide coverage when there is an
> 'innocent insured who did not commit the conduct excluded
> by the policy'" . . . . "If the exclusion clause uses the
> term 'the insured' application of the separation of
> insureds clause requires that the term be interpreted as
> referring only to the insured against whom the claim is
> being made under the policy" . . . . "If, however, the
> exclusion clause uses the term 'any insured,' then
> application of the separation of insured clause has no
> affect on the exclusion clause."[22]

The Separation of Insureds provision in the Century Policy

provides:

> 7.   Separation of Insureds
>
> Except with respect to the Limits of Insurance, and
> any rights or duties specifically assigned in this
> Coverage Part to the first Named Insured, this
> insurance applies:
>
> a.   As if each Named Insured were the only Named
> Insured; and
>
> b.   Separately to each insured against whom claim
> is made or "suit" is brought.[23]

---

[21]Plaintiff's Motion for Partial Summary Judgment, Docket Entry
No. 36, p. 13.

[22]Id. at p. 12 (citations omitted).

[23]Century Surety Company Commercial Lines Policy, Exhibit A
attached to Docket Entry No. 35 (Document 35-4, p. 7).  See also
Exhibit A2 included in Appendix in Support of Plaintiff's Motion
(continued...)

-14-

In Maxey the court addressed "the application of a separation of insureds clause to a policy provision that referred to '*any* insured,'" id. at 211, an issue that it deemed to be "a case of first impression under Texas law." Id. Asked to construe the term "any insured" used in the auto exclusion clause of Bituminous' Commercial General Liability (CGL) policy that excluded coverage for "'bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to other of any . . . 'auto' owned or operated by or rented or loaned to '*any insured*,'" the court concluded that the clause excluded coverage for bodily injury arising out of conduct that fell within the scope of the exclusion by any entity or person insured by the policy, regardless of which insured was seeking coverage.   Id. at 215.   In reaching its conclusion the court distinguished the term "any insured" used in the exclusion from "the insured," used in the separation of insureds provision.   Id. at 215.   In support of its opinion the court cited two Texas Supreme Court cases: Glover v. National Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977) (when the parties' intent may be discerned from the plain language of an insurance policy that language must be given effect), and National Union Fire Ins. Co. of Pittsburgh, PA v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991) (courts should not adopt an unreasonable

---

[23](...continued)
for Partial Summary Judgment, Docket Entry No. 37 (Document 37-4, p. 32).

construction of an insurance contract).  While this court finds the reasoning of <u>Maxey</u> persuasive, that reasoning does not support Starwood's argument.

Like the court in <u>Maxey</u> this court must address what appears to be a case of first impression under Texas law, i.e., the application of a separation of insureds clause to a policy exclusion that refers to "the named insured."  The "Action Over Exclusion" of Century Policy excludes coverage for

"[b]odily injury" to:

(1)  An "employee" of <u>the named insured</u> arising out of and in the course of:

    (a)  Employment by <u>the named insured</u>; or

    (b)  Performing duties related to the conduct of <u>the named insured's</u> business.[24]

Although Starwood argues that "the named insured" in the exclusion must be read as "the insured against whom claim is made or 'suit' is brought," referenced in the Separation of Insureds provision, Starwood has neither cited any case that has so construed the term "the named insured," nor argued that the Texas Supreme Court would do so were the issue presented to it.  When asked to construe the term "any insured" used in the same context, the <u>Maxey</u> court on which Starwood relies distinguished use of "any insured" from use

---

[24]Century Surety Company Commercial Lines Policy, Exhibit A attached to Docket Entry No. 35 (Document 35-3, p. 17) (emphasis added).  See also Exhibit A2 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-4, p. 18).

of "the insured," which it observed the Texas Supreme Court had construed in Commercial Standard, 455 S.W.2d at 714. See Maxey, 110 S.W.3d at 212.

In Commercial Standard a general contractor's employees were injured when a truck crane owned and operated by an insured subcontractor collapsed. The general contractor was an additional insured under the subcontractor's policy. The policy contained an exclusion for bodily injury to any employee of "the insured," and a severability of interests clause. When the injured employees of the general contractor sued the subcontractor, the subcontractor demanded that American General assume liability under the insurance policy. The Court held that the exclusion did not apply to the subcontractor because of the severability of interests clause, and, therefore, the insurance policy afforded coverage to the subcontractor. Id. at 721-22. The Court explained that

> the term "the insured" as used in this policy must be
> examined by first applying the "severability of
> interests" test. "The insured" does not refer to all
> insureds; rather the term is used to refer to each
> insured as a separate and distinct individual apart from
> any and every other person who may be entitled to
> coverage thereunder. When a claim is made against one
> who is an "insured" under the policy, the latter is "the
> insured" for the purpose of determining the company's
> obligations with respect to such claim.

Id. at 721. Although the general contractor was "an insured" under the policy, the injury to the general contractor's employees did not fall within the exclusion for bodily injury to employees of "the insured," when "the insured" requesting coverage was the

-17-

subcontractor who was not the injured employees' employer.  Id. at
715, 721-22.  Since the Commercial Standard opinion did not address
the application of a severability of interests, or separation of
insureds, clause to an exclusion referencing the term "any
insured," the Maxey court relied on the only reported decision it
found that had construed that term in a similar context, Petticrew
v. ABB Lummus Global, Inc., 53 F.Supp.2d 864, 870-71 (E.D. La.
1999).

In Petticrew Dickson GMP International, a subcontractor under
a contract between ABB Lummus Global, Inc. and Mobil Corporation
for construction of an oil platform, had agreed to secure insurance
coverage for the project, including a CGL policy, and to name ABB
and Mobil as additional insureds.  The CGL policy excluded
liability for damages for bodily injury arising out of the use of
any watercraft "owned or operated by or rented or loaned to any
Insured" or "operated by any person in the course of his employment
by any Insured."  Id. at 870.  Petticrew, an employee of Dickson
who was under the supervision of ABB, was being lifted in a
personnel basket to a barge from a workboat used to transport
workers from the drilling platform to the barge when the operator
released the basket too soon, injuring him.  ABB argued that
because the policy contained a severability of interests clause,
each insured had to be treated differently; thus, since Petticrew
was not an employee of ABB, the insured that caused the accident,

-18-

the exclusion of damages incurred by "any insured" did not apply, and Petticrew's injuries were covered liabilities of the policy. Id. at 871.  The court held, however, that Petticrew was "clearly the employee of the named insured, Dickson, and thus, the 'employee of any insured' language excluded coverage to ABB."  Id.

Observing that the Petticrew court had not explained the reasoning for its decision, the Maxey court reasoned that the Petticrew court seemed to have relied on a natural reading of the plain language of the exclusion and on the policy's definition of "an Insured" as "any person or organization qualifying as an Insured in the Person Insured provision of this policy."  Since the CGL policy at issue in Maxey contained a similar definition of "an insured," and specifically included within that definition the employees of an insured acting within the scope of their employment, the court concluded that "the only effect of the separation of insureds clause is to alter the meaning of the term 'the insured' to reflect [the insured] who is seeking coverage." Maxey, 110 S.W.3d at 214.  The court explained that

> [i]f the exclusion clause uses the term "the insured,"
> application of the separation of insureds clause requires
> that the term be interpreted as referring only to the
> insured against whom a claim is being made under the
> policy. Commercial Standard Ins. Co., 455 S.W.2d at 721.
> If, however, the exclusion clause uses the term "any
> insured," then application of the separation of insureds
> clause has no effect on the exclusion clause;  a claim
> made against any insured is excluded. Petticrew, 53
> F.Supp.2d at 871.

Id. at 214 (additional citations omitted).  The court reasoned that

-19-

[t]o hold that the term "any insured" in an exclusion clause means "the insured making the claim" would collapse the distinction between the terms "the insured" and "any insured" in an insurance policy exclusion clause, making the distinction meaningless. It would also alter the plain language of the clause, frustrating the reasonable expectations of the parties when contracting for insurance.

We should not adopt an unreasonable construction of an insurance contract.

Moreover, construing the term "any" the same as the word "the" in an exclusion clause when an insurance policy contains a separation of insureds or severability of interests clause would require a tortured reading of the terms of the policy.

Id.

In the present case nothing in the Century Policy indicates that the term "the named insured" used in the "Action Over Exclusion" is to be construed as the "insured against whom claim is made or 'suit' is brought" used in the Separation of Insureds provision.  Moreover, since the Separation of Insureds provision itself has two clauses, one pertaining to the "named insured" and the other pertaining to "each insured" the court is persuaded that the term "the named insured" used in the "Action Over Exclusion" must be given its plain meaning within the terms of the policy, which even Starwood does not dispute is Absolute.  See Glover, 545 S.W.2d at 761.  See also Reilly v. Rangers Management, Inc., 727 S.W.2d 527, 529 (Tex. 1987) ("Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated.").  Since the "Action

-20-

Over Exclusion" does not use the term "the insured" but, instead, the term "the named insured," and since Starwood does not dispute that Absolute is the only named insured under the Century Policy and claimants in the underlying lawsuit alleged that Tobillas was an employee of Absolute, the court is not persuaded that the Separation of Insureds provision precludes application of the "Action Over Exclusion" to bar coverage to Starwood for the claims asserted in the underlying lawsuit.  See <u>Maxey</u>, 110 S.W.3d at 214 (separation of insureds clause had no effect on exclusion clause using term "any insured" as opposed to "the insured").

### (2)   Does Century's Own Logic Preclude Application of the "Action Over Exclusion" to Starwood?

Starwood argues that

> under Century's own logic, the exclusion cannot be
> invoked here.  Century claims that the exclusion is
> invoked because the plaintiff alleged that the injured
> worker was Absolute Glass' (the 'named insured')
> employee.  However, the plaintiff <u>also</u> alleged that the
> injured worker was an employee of Starwood — which is not
> the 'named insured' as Century contends.  If the jury in
> the underlying lawsuit were to find the injured worker to
> have been an employee of Starwood at the time of the
> injury (as alleged in the pleadings) and assessed damages
> against Starwood in connection with this theory, it
> simply cannot be said that such liability would be to an
> employee of the named insured 'arising out of . . .
> employment by the <u>named insured</u>' — a required element of
> the exclusion.  Starwood would not and could not be
> liable for damages stemming from injuries arising out of
> the employee's alleged 'dual' employment with Absolute
> Glassworks.  Because it was alleged that Tobillas was an
> employee of Starwood and damages were sought based upon
> this employment relationship, there was a potential that

damages could be awarded for injuries arising out of employment with Starwood.[25]

Although Starwood argues that the claimants in the underlying lawsuit alleged that Tobillas was a Starwood employee, Starwood fails to cite any portion of the pleadings where claimants allege that Tobillas was at any time a sole employee of Starwood. Instead, the claimants in the underlying lawsuit alleged that "Arturo Tobillas was an employee of "Absolute" and/or dually employed and under the control of "Hotel" Defendant [i.e., Starwood], in the course and scope of his employment, at times material therein and on such occasion of his death."[26]  Thus, the pleadings clearly allege that Tobillas was an employee of Absolute, or a dual employee of Absolute and Starwood when he died.

A person may be the servant of two employers at one time if the service to one does not involve abandonment of the service to the other.  See White v. Liberty Eylau School Dist., 880 S.W.2d 156, 159 (Tex. App. — Texarkana 1994, writ denied).  Dual employee status would not mean that Tobillas was not in the course and scope of employment by Absolute when he died.  It would mean that he would have been in the course and scope of his employment by both Absolute and Starwood.  Because Tobillas would still be an employee

[25]Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 36, p. 13.

[26]See Plaintiffs' First Amended Original Complaint, Exhibit A3 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37, p. 5.

of Absolute even if he were a dual employee when he died, the court concludes that the claims brought against Starwood on his behalf would still be barred by the "Action Over Exclusion." Accordingly, the court concludes that Century's own logic does not preclude application of the "Action Over Exclusion" to Starwood.

> (b)  Is Century Required to Pay Costs of Defense
> Incurred by Starwood Prior to Adjudication of the
> Applicability of the "Action Over Exclusion"?

Starwood argues that Century waived any defense it may have had to Starwood's claim for defense costs by undertaking Starwood's defense pursuant to a reservation of rights. Starwood argues that

> because Century never withdrew its agreement to defend,
> any declaration that the "Action Over Exclusion" applies
> would not excuse or alleviate Century's duty to pay for
> defense costs already incurred. An adjudication of
> coverage does not apply retroactively when the duty to
> defend has already been accepted.[27]

As evidence that Century agreed to pay its defense costs, Starwood cites "two reservation of rights letters (April 5, 200[6] and September 21, 2005)" in which, according to Starwood, Century promised to "reimburse Starwood its reasonable and necessary defense fees and expenses."[28] Although Starwood cites a number of cases from foreign jurisdictions that it argues stand for the principle "that any declaration that there is no duty to defend

---

[27]Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 36, p. 14.

[28]Id.

-23-

applies only prospectively when the carrier has agreed to defend under a reservation of rights,"[29] none of the cases cited by Starwood required an insurer to reimburse an insured for the cost of a defense the insured was not obligated to provide.  Moreover, the court is not persuaded that Starwood has presented any evidence capable of proving that Century agreed to reimburse Starwood for the costs it incurred defending the underlying lawsuit.

The uncontested summary judgment evidence establishes that on June 22, 2005, counsel for Starwood wrote to Century demanding that Century "assume responsibility" for Starwood's defense in the underlying lawsuit and "acknowledge its contractual obligation to provide indemnity for any damages" ultimately awarded therein.[30] On August 4, 2005, Century denied coverage citing, inter alia, the "Action Over Exclusion" of Absolute's policy.[31] On August 16, 2005, Starwood contested Century's declination of coverage.[32]  On September 21, 2005, Century notified Starwood that although it

---

[29]Id. at p. 15.

[30]June 22, 2005, letter from William S. Helfand to Kathy Zatari, Exhibit A4 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37.

[31]See August 4, 2005, letter from Lorna J. New to Dominic Smith, Exhibit A5 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-3, pp. 7-8).

[32]See August 16, 2005, letter from Christine Kirchner to Lorna J. New, Exhibit A6 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37.

"stands by and reiterates its analysis and coverage position enunciated in its August 04, 2005 letter . . . Century Surety agrees to provide a qualified defense subject to this reservation of rights."[33]   Century's letter to Starwood explained that

> [t]o the extent Starwood has incurred any obligation, expense or voluntary payment, i.e., defense fees and expenses incurred prior to Starwood's notification and tender to Century Surety on or about June 22, 2005, Century Surety is not liable or responsible for reimbursement of such voluntary payment.
>
> However, those reasonable and necessary defense fees and expenses incurred by Starwood in defending those claims and actions asserted against it by Plaintiffs in the Underlying Lawsuit from Starwood's June 22, 2005 notice to Century Surety up to and including the present and future incurred reasonable and necessary defense fees and expenses **may, possibly, be subject to reimbursement to Starwood** and/or its insurer from Century Surety.[34]

On April 5, 2006, after receiving the First Amended Complaint in the underlying lawsuit, Century supplemented its prior coverage position and reservation of rights by notifying Starwood that any reimbursement of defense costs that it might provide to Starwood would be limited to one-half (50%) of its reasonable and necessary defense fees and expenses.[35]   Reasserting its position that the Action Over Exclusion precluded coverage for the damages sustained

---

[33]September 21, 2005, letter from Lorna J. New to Christine Kirchner, Exhibit A7 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-9, p. 2).

[34]Id. at p. 6 (emphasis added).

[35]April 5, 2006, letter from Lorna J. New to Christine Kirchner, Exhibit A8 included in Appendix in Support of Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 37 (Document 37-10, pp. 1 and 12).

by Tobillas because he was an employee of the named insured, Absolute,[36] Century also reiterated its denial of "any liability under the Policy."[37]

Since Century steadfastly maintained that the claims asserted against Starwood in the underlying lawsuit were barred by the "Action Over Exclusion," and expressly stated that it may, not would, reimburse half of Starwood's reasonable and necessary defense costs, and because the court has already concluded that the "Action Over Exclusion" barred coverage for the claims asserted against Starwood in the underlying lawsuit, the court is not persuaded that Century's statements that it may reimburse Starwood's defense costs obligate Century to reimburse Starwood for the costs of a defense that Century was not obligated to provide.

## IV. <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that the "Action Over Exclusion" bars coverage for the claims asserted against Starwood in the underlying lawsuit, that Century has no duty to defend Starwood, and that Century has no obligation to reimburse Starwood for costs incurred defending the underlying lawsuit. Accordingly, Defendant Century Surety Company's Motion for Partial Summary Judgment (Docket Entry No. 34) is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment (Docket Entry

---

[36]<u>Id.</u> at p. 9.

[37]<u>Id.</u> at p. 12.

No. 36) is **DENIED**.  Counsel will appear at Docket Call on July 13, 2007, at 4:00 p.m., in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.  The joint pretrial order is due July 6, 2007.

      **SIGNED** at Houston, Texas, on this the 5th day of June, 2007.

_____
           SIM LAKE
UNITED STATES DISTRICT JUDGE